MYRTLE COLVIN ET AL. v. HENRY C. HUTCHISON ET AL., Defendants, ELEANOR P. DAVIDGE, Appellant.—92 S. W. (2d) 667.

Division One, March 10, 1936.

*Foristel, Mudd, Blair & Habenicht* for appellant.

*Fordyce, White, Mayne & Williams, G. C. Stribling* and *Hill & Bullington* for respondents.

578

HYDE, C.—This is an action to try and determine title to real estate in the city of St. Louis. Plaintiffs, each claiming an undivided one-twelfth interest in the land, claimed that defendant, Eleanor Davidge, hereinafter called appellant, owned only a one-half interest therein and the court so found. Appellant claims the whole title and has appealed from the trial court's judgment.

The facts are undisputed. The land in question belonged to John H. Livingston, a resident of Bond County, Illinois, who died in January, 1931, leaving a will which devised this land in fee to appellant. His will gave only a life estate in other land to Mary M. Livingston, the wife of the testator. This will was probated in Bond County, Illinois, and the executor qualified there. Mary M. Livingston was adjudged insane and H. W. Riedemann was appointed and qualified as conservator of her estate in May, 1931. Thereafter, during the same month, Riedemann filed on behalf of Mary Livingston, in the recorder's office in Bond County, Illinois, a duly acknowledged renunciation of this will which also stated an election for her, as follows: "I, H. W. Riedemann, conservator of the said Mary M. Livingston, for and on behalf of her, the said Mary M. Livingston, do hereby elect for her, the said Mary M. Livingston, in lieu of such devise to her made by the terms and provisions of the Last Will and Testament of the said James H. Livingston, deceased, to take the dower and legal share in said estate to her, the said Mary M. Livingston." Appellant says: "No question is made of the sufficiency of said renunciation and election as to form and time of its execution and filing in Bond County, Illinois." This renunciation and election was not filed in St. Louis and nothing else in the nature of an election was shown to have been filed anywhere. Mary Livingston died May 28, 1931, without making any disposition of this land

by will or otherwise. No lineal descendants survived James H. Livingston or Mary Livingston. Plaintiffs are collateral heirs of Mary Livingston. A certified authenticated copy of the will of James H. Livingston, together with the order of the County Court of Bond County, Illinois, admitting said will to probate in Illinois, was filed in the Probate Court of the City of St. Louis in April, 1931. It was by that court "admitted to probate and record in this state as the last will and testament of said James H. Livingston, deceased," and letters of administration issued to appellant.

The question for decision is: What was the effect, upon the widow's rights in the real estate of her husband located in St. Louis, Missouri, of the renunciation and election filed in Bond County, Illinois? Appellant contends that the renunciation and election filed there had no effect at all upon the title to the Missouri land and that it, therefore, has passed under the devise in the will to appellant.

The whole doctrine of election rests upon the equitable ground that no one can be permitted to claim inconsistent rights with regard to the same subject. If the benefits given by a will are accepted, this is usually held to be an adoption of the whole will and a renunciation of every right or claim inconsistent with it. [Wood v. Conqueror Trust Co., 265 Mo. 511, 178 S. W. 201, and cases cited; Lindsley v. Patterson (Mo.), 177 S. W. 826, L. R. A. 1915F, 680; 69 C. J. 1090, sec. 2330; 28 R. C. L. 331, secs. 319-320.] In the absence of statutory requirements, an election or renunciation may be made or implied from unequivocal declarations or acts showing such intent. [69 C. J. 1114, secs. 2386-2410; 82 A. L. R. 1509, note.] As pertaining to the rights of a widow in real estate of her deceased husband, the right of election arises from the fact that she has rights of ancient origin under the common law which cannot be taken from her by any act or obligation of her husband. [9 R. C. L. 601, sec. 43; 19 C. J. 458-61, secs. 4-12; Ambrose v. Rugg (Ohio), 175 N. E. 691, 74 A. L. R. 449; 1 Woerner's Law of Administration, 330, Chap. XI.]. These rights have been modified, added to, and the choice of other rights in lieu thereof provided by statute. When a husband by will provides for his wife rights which are different from and inconsistent with rights which she would have without a will, she may take her choice between testamentary benefits and legal rights. These matters are now largely regulated by statutory enactments. [For our statutes see Art. 15, Chap. 1, R. S. 1929, and particularly Secs. 332 and 333; for Illinois statutes see Secs. 10-13, Chap. 41, R. S. Illinois, as amended by Laws 1925, p. 344, Illinois Bar Association Edition, Revised Statutes 1935.] Appellant's theory here is that the renunciation made herein was good in Illinois, the will was invalid as to Mary M. Livingston there, and she took her rights in real estate there against the provisions of the

will; but that nevertheless, the same will was valid in Missouri as to her and she was bound by its provisions as to rights in real estate here. We do not agree to that proposition. In Lindsley v. Patterson, supra, where a will had been accepted in Connecticut and it was attempted to renounce and take under the law here, this court said that it would be absurd to say that a will could be accepted in one state and renounced in another. Wood v. Conqueror Trust Company, supra, in the same situation which is the converse of the situation here, followed the Lindsley case. Appellant says that her reason for contending otherwise is because title to real estate must be governed by the law of the State in which it is located. That is fundamental, but no Missouri statute is pointed out which provides specifically that a widow, who is a resident of another state and who renounces a will there, must file such a renunciation also in this State in order to be entitled to the rights which she would have in land here if no will had been made. Section 333, Revised Statutes 1929, seems meant only to provide what must be done by residents of this State but if it can be construed to cover nonresidents there is nothing in it which requires more than one filing of a renunciation in any case. Section 329, Revised Statutes 1929, which provides for filing an election to take an absolute part in lieu of dower does not even require that document to be filed and recorded in more than one county.

There are cases holding that a renunciation must be filed in the state where the land is located. [Apperson v. Bolton, 29 Ark. 418 (based on statute making will control unless action taken within certain time); Rannels v. Rowe, 166 Fed. 425 (applying decision of Arkansas court to claim to land there); McGinnis v. Chambers, 156 Tenn. 404, 1 S. W. (2d) 1015, 82 A. L. R. 1492 (cites and follows Apperson v. Bolton).] However, we note the following statement in the Arkansas case: "It has been suggested that if a dissent in Tennessee is not a valid dissent in Arkansas, an acceptance of the provisions of a will in Tennessee would not be binding here; and that if Bolton had devised to his wife his whole estate in Tennessee, no matter how large, she might have accepted it, and then dissented in Arkansas, and claimed dower in the estate here. But we think, though the point is not before us, that she would not be permitted to do that, for it is a general principle of law that one cannot claim under a will and against it too, and an acceptance of the provisions of the will in Tennessee would bind her everywhere." Surely it is a poor rule that will not work both ways. We think that the reason of the matter is that, when a man dies owning real estate in several states, leaving a will providing for his wife benefits which under the law she would take in place of dower if she accepted it, his widow's situation is as follows: The will offers her certain testamentary benefits; each state offers her instead certain

estates in the land located therein; but the law of each state governs the kind of an estate she may have there if she renounces the will. One state may offer her only common-law dower if she renounces, another may offer only an absolute share, another may offer a choice between such dower not subject to debts and an absolute estate subject to debts. If she renounces the will, in order *to make the choice between different estates any state offers for renunciation, she must do what that state requires* or get only what she would receive there upon her failure to make such a choice in the required way. But when she renounces the will, in the state of her residence, where its validity is established by probate, she renounces it *in toto*, everywhere and cannot take testamentary benefits under it anywhere. At least in the absence of a statute with specific requirements, no filing of the renunciation elsewhere is necessary. Likewise if she accepts it, in the state of her residence and its probate, she is bound by it everywhere and cannot renounce it in some other state. This view is supported by well-considered authority, and gives effect both to the principle that title to real estate is governed by the laws of the state where it is located and to the principles upon which the doctrine of election is based. [Russell v. Shapleigh, 275 Mass. 15, 175 N. E. 100; In re Harris Estate, 271 N. Y. Supp. 464; Mettler v. Warner (Neb.), 152 N. W. 327; Jones v. Gerock, 59 N. C. 190; Wilson v. Cox, 49 Miss. 538; Slaughter v. Garland, 40 Miss. 172; 28 R. C. L. 333, sec. 322; 69 C. J. 1091, sec. 2332, see also sec. 2438; Ann. Cas. 1914A, 446, note; L. R. A. 1915F, 680, note; 2 L. R. A. (N. S.) 463, note; 1 Woerner's Law of Administration, 397, sec. 119; 2 Page on Wills, 2423, sec. 1446; 2 Beale's Conflict of Laws, 977, sec. 253.1; American Law Institute Restatement of Conflict of Laws, 337, sec. 253.]

We, therefore, have no difficulty in reaching the conclusion that the widow Mary Livingston was not bound by the provisions of her husband's will but could take her rights under the law in the Missouri land. But this necessarily presents for our decision a more difficult question, namely: What rights did she get under the Missouri law? This must be determined by our own statutes. They offered her the choice to "be endowed of the third part" thereof "to hold and enjoy during her natural life" not subject to debts or obligations of her husband (Sec. 318, R. S. 1929); or to have (since there were no children) "one-half of the real . . . estate . . . absolutely, subject to the payment of the husband's debts." [Secs. 325 and 327, R. S. 1929.] However, she had to make her choice of an absolute interest, subject to debts, if that was what she wanted, whether it be a child's part (if there are children) or one-half (if no children), "by declaration, in writing, acknowledged before some officer authorized to take the acknowledgment of deeds . . . within twelve months after the first publication of notice of

granting'' letters to an executor or administrator. Otherwise, she took dower and not an absolute interest; that is, in the absence of such a written declaration to choose an absolute interest subject to debts, the law chose dower for her, because it is the policy of our law to preserve to widows the common-law right of dower unless they see fit to themselves indicate within the statutory time a choice of some other interest in place of it. [Sec. 329, R. S. 1929; Keeney v. McVoy, 206 Mo. 42, 103 S. W. 946; Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825; Landis v. Hawkins, 290 Mo. 163, 234 S. W. 827; McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S. W. 506; O'Brien v. Sedalia Trust Co., 319 Mo. 1001, 5 S. W. (2d) 74; Thomas v. McGhee, 320 Mo. 519, 8 S. W. (2d) 71; Wallace v. Crank, 324 Mo. 1114, 26 S. W. (2d) 601.] No doubt the reason, for this rule, is the same reason that dower was first recognized by the law, to preserve to the widow means for herself and family that obligations of the husband could not take away. The question here is, did Mary M. Livingston ever make a choice to take an absolute interest, instead of dower? So far as the record shows, there was only stated in her renunciation of the will an election, in lieu of the devise therein, ''to take dower and legal share in said estate.'' That certainly is not a choice between dower and an absolute interest subject to debts required by our statute. If it had been filed in St. Louis it would only have shown that the widow renounced the will and desired to take her rights under our statutes, but it would not have advised anyone that she chose an absolute interest subject to debts instead of dower. Not having declared to take an estate other than dower, she took dower.

Section 329 Revised Statutes 1929, requires the filing of the declaration to take an absolute interest in lieu of dower in the probate court and recorder's office in the county ''in which letters testamentary or of administration were granted.'' This apparently is intended to apply to residents of this State and there does not seem to be any statute which specifically requires nonresident widows to file such a declaration of election in this State, unless it can be implied from general record or probate statutes. However, our statute does require that a widow must make and acknowledge such a written declaration. This is mandatory and a renunciation of a will is not such an election. [McLain v. Mercantile Trust Co., supra.] We do not need to decide here what filing in this State is required of a widow of a nonresident, because our conclusion is that the only declaration made for the widow in this case, while sufficient as a renunciation of the will, was not sufficient as an election to take an absolute interest subject to debts in lieu of dower. The form used in this case follows the form for renunciation and election set out in the Illinois statutes (Sec. 13, Chap. 41). The Illinois stat-

utory plan for a widow is quite different from ours. It would unnecessarily lengthen this opinion to set out the provisions of the Illinois statutes concerning rights after renunciation of a will, but we note that the Illinois Supreme Court has said, concerning the effect in that state of filing the statutory form stating an election to take "dower and legal share," in lieu of the provisions made by the will: "The renunciation concluded practically in the form prescribed by the statute, and by it Margaret K. Dull stated that she elected to take in lieu of the provisions made for her in the will *her dower and legal share* in the estate. But the language used is of no importance in determining to what estate she became entitled. Upon the filing of her renunciation the law fixed what estate she should take, and she became entitled to it whether she claimed it specifically or not in her renunciation. Any statement that she elected to take dower would not prevent her from taking as heir where her husband left no issue or descendants, and her rights were not affected by claiming or omitting to claim any specific estate. . . . No weight, therefore, is to be given to the form of the renunciation of Margaret K. Dull and her intention must be otherwise ascertained." [Waddill v. Waddill, 296 Ill. 204, 129 N. E. 531; see also, Gullett v. Farley, 164 Ill. 566, 45 N. E. 972; Davis v. Mather, 309 Ill. 284, 141 N. E. 209; Canavan v. McNulty, 328 Ill. 388, 159 N. E. 782.]

Under our law, as we have pointed out, language showing that the widow desires an absolute interest is not only important "in determining to what estate she became entitled" but she cannot take such an interest without clearly declaring her choice of it, because such a declaration is a mandatory requirement. When we undertake to find if the intention of Mary M. Livingston can, outside of her renunciation of the will "be otherwise ascertained," we find no expression thereof which was made as required by our statute. It seems to be the policy of the Illinois law to give an absolute interest rather than dower unless dower is claimed, but our law gives dower instead of an absolute interest unless an absolute interest is claimed. It follows that Mary M. Livingston "never had an estate of inheritance in the land" in this State, and therefore her collateral heirs, plaintiffs herein, "have no interest whatever therein." [Wallace v. Crank, supra.].

The judgment is reversed and the cause remanded with directions to dismiss plaintiffs' petition. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.